IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JAMES R. DOWNES, #281824          )
                                  )
          Plaintiff,              )
                                  )
     v.                           )     CIVIL NO. 2:15-cv-437-WKW
                                  )
CARTER DAVENPORT, et al.,         )
                                  )
          Defendants.             )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

## I. INTRODUCTION

Plaintiff, James R. Downes ("Downes") is an inmate of the Alabama Department of Corrections, housed at Easterling Correctional Facility ("Easterling") in Clio, Alabama. He filed this action under 42 U.S.C. § 1983, alleging constitutional errors in the handling and delivery of his mail at Easterling in 2015.[1] Downes names as defendants Jefferson S. Dunn ("Dunn"), Carter Davenport ("Davenport"), Derrick Carter ("Carter"), Phelix Woods ("Woods"), Sharon Blakely ("Blakely"), Walter Myers ("Myers"), Captain Cargill ("Cargill"), and Captain Lawson ("Lawson").[2] Docs. 1, 17, 18, 92, 93. The court dismissed the claims for money damages against Myers, Cargill, and Lawson; the remaining claims against Myers, Cargill, and Lawson are in their official capacities only for injunctive and declaratory relief. Docs. 99, 101. The claims against defendants Dunn, Davenport, Carter, Woods, and Blakely are in their individual and official

---

[1] The court previously denied Downes's request to add claims regarding recent actions that occurred at Easterling. Doc. 93.
[2] The court previously dismissed defendants Department of Corrections and State of Alabama because they are entitled to absolute immunity from suit. Docs. 16, 21.

capacities. Docs. 99, 101. Downes requests damages, injunctive relief,[3] fees, and unspecified relief "for reading my legal mail" and "for 1st Amendment rights." Doc. 1 at 4; Doc. 3; Doc. 4 at 9-10.

Defendants filed an answer, special report, supplemental reports, and supporting evidentiary materials addressing Downes's claims for relief. Docs. 26, 28, 30, 40, 48, 52, 55, 62, 63, 64, 75. Upon receipt of the defendants' reports, the court directed Downes to file a response, including sworn affidavits and other evidentiary materials, and specifically cautioning Downes that "at some time in the future the court may treat the defendants' reports and the plaintiff's response as a dispositive motion and response." Doc. 65 at 1-2. Downes responded to Defendants' reports and materials. Docs. 29, 31, 35, 46, 53, 68, 69, 70, 81.

The court will treat the defendants' exhaustion defense as a motion to dismiss, and the court will treat defendants' reports as a motion for summary judgment. Upon consideration of the motions, the plaintiff's responses, and the evidentiary materials filed in support and in opposition to the motion, the court concludes that the defendants' motion to dismiss is due to be denied and the motion for summary judgment is due to be granted.

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam)

---

[3] The court previously denied Downes's requests for preliminary injunctive relief. Docs. 3, 4, 6, 77, 84.

(citation to former Fed. R. Civ. P. 56 omitted; "issue" altered to "dispute" to reflect the stylistic change in the current rule). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to Downes to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to the case exists. *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it . . . ."); *see also Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (court considers facts pled in a plaintiff's sworn complaint when considering his opposition to summary judgment"). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice

3

. . . ." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam). Only disputes involving material facts are relevant, and what is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248. To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation by the court, a pro se litigant does not escape the burden of sufficiently establishing a genuine dispute of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, a plaintiff's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Downes fails to demonstrate a requisite genuine dispute of material so as to preclude summary judgment on the claims against the defendants. *See Matsushita*, 475 U.S. at 587.

### III. SUMMARY OF CLAIMS AND MATERIAL FACTS

The facts are viewed in the light most favorable to Downes, the nonmoving party. Downes is an inmate at Easterling. Dunn is the Commissioner of the ADOC. Docs. 17, 18. Davenport was a Correctional Warden III at Easterling in 2015. Doc. 26-2. Carter was a Correctional Warden I at Easterling in 2015. Doc. 26-3. Woods was a Correctional Lieutenant at Easterling in 2015.

4

Doc. 26-4. Blakely was a Mail Clerk at Easterling in 2015. Doc. 26-5. Myers, Cargill, and Lawson were employed at Easterling, respectively, as the Warden, Captain of the Mail Room, and Captain of the Administration Building in 2017. Docs. 92, 93.

Procedures for the mailroom at Easterling are governed by Standard Operating Procedure ("SOP") 448-01. Doc. 64-2 (dated June 27, 2014). In relevant part, SOP 448-1 requires mail to be delivered generally within 72 after receipt. *Id.* at 4. Inmates may receive non-legal materials in envelopes larger than 6"x10", but they are considered packages that require prior approval of the Warden or designee for distribution. *Id.* at 5. The envelope size restriction does not apply to "legal mail." *Id.* "Legal mail" is not defined in SOP 448-01, but it is defined in SOP 448 as "[l]etters to and from attorneys, courts, judges, clerks, and other officials of the court and government agencies." Doc. 26-1 at 2 (dated Oct. 20, 2008); Doc. 26-2 (Davenport Aff.). Under SOP 448, "[t]he Chaplain, or the Warden's designee, is responsible for reviewing all mail entering the institution for an inmate that is presumed to be religious materials." Doc. 26-1 at 2. SOP 448-01 does not specifically address religious mail. Doc. 64-2. Under SOP 448-01, when mail is rejected, the mail clerk sends the inmate a Notification of Rejected Mail Form 448 ("Form 448"). *Id.* at 5. Form 448 informs the inmate he may appeal the decision to the Warden or designee and provides space to state reasons for the appeal. *Id.* at 9. Under SOP 448-01, "[t]he inmate may appeal the decision by returning the form to the Mailroom. [] The appeal will be reviewed by the Warden or his designee. Publications(s) ban appeals will be forwarded to the Commissioner's office for review." *Id.* at 6. SOP 448-01 does not indicate the inmate may appeal to the Commissioner, and Form 448 provides no space to appeal to the Commissioner. *Id.* at 6, 9. If the appeal is denied, the inmate may return the materials to the sender within thirty days, after which the materials are

destroyed. *Id.* at 6. SOP 448-01 also provides, "All publications must come directly from an established and recognized publisher/company." *Id.* at 5.

Downes makes many assertions in his various filings, but his claims center on alleged First Amendment violations regarding the following incidents:

- Outside of Downes's presence, Blakely and Woods opened and read a June 8, 2015, letter addressed to Downes from Elayne Sobel, Legal Assistant, Lewisburg Prison Project. Docs. 29-1 at 30-31; 68 at 1, 70-3. The envelope containing Sobel's June 8, 2015, letter is marked "Angus Love Attorney at Law **SPECIAL MAIL, OPENLY ONLY IN THE PRESENCE OF THE INMATE**." Doc. 29-1 at 31. According to Downes, Blakely and Woods told Downes the letter was not "legal mail." Doc. 68 at 1. Downes then received the letter. *Id.* The letter concerns the mailing status of a package of materials sent to Downes from the Lewisburg Prison Project on March 27, 2015. Docs. 70-4, 70-5, 70-6. Blakely denied reading any letter from the Lewisburg Prison Project, and she denied having Woods read any letter. Doc. 62 at 1-2. The log for legal mail on June 11, 2015, has Downes's name on it, but no mail is identified and no signature is on the log. Doc. 26-6 at 21. On May 22, 2015, Downes received mail in an envelope similarly marked Angus Love Attorney at Law **SPECIAL MAIL, OPENLY ONLY IN THE PRESENCE OF THE INMATE**," and it was opened in Downes's presence without incident. Docs. 29 at 1-2; 29-1 at 25-26.

- Materials were shipped from the Lewisburg Prison Project on March 27, 2015, but they were not marked "legal mail" and they were not acknowledged as received in the Easterling mailroom until May 28, 2015. Docs. 29-1 at 34, 63-1 at 4. Blakely rejected the materials on June 2, 2015, because they were in a non-standard sized envelope and needed special approval. Carter approved them on June 26, 2015. Doc. 63-1 at 1, 4. The envelope containing the materials was not marked "legal mail," and Sobel did not consider the materials to be legal correspondence. "It was just the bulletins that you requested and for which you paid." Doc. 70-3. Downes maintains that Blakely delayed acknowledging the materials, covered up the delay by blocking out the postmark, and should not have withheld the materials, which he needed for his legal cases.

- Downes never received envelopes and stamps sent to him from Carolyn Ford that he intended to use to mail legal filings. Downes asserts that Blakely took or destroyed them. Blakely denies receiving the envelopes or stamps or destroying them. Docs. 48-1, 55-1, 62 at 3, 64-1.

- Downes never received a hardcover book entitled, "*Packing the Court: The Rise of Judicial*," shipped to Easterling on about April 17, 2015, directly from Edward R. Hamilton Bookseller Company. Docs. 29-1 at 32, 81-1 at 1. Downes asserts he needed the book for his legal cases. Blakely states she rejected a book for Downes from Books-a-Million on January 21, 2015, because "hard back books not allowed thru mail," and

[h]ard back books are not allowed per the Institutional Warden." Docs. 30-1, 63-1 at 1. Blakely states that regardless of the source, "Downes was notified that he could not receive the book because it was a hard back book." Doc. 75-1 at 1. Blakely avers Downes said he did not want to protest receiving the hardback book he received. *Id.* Blakely stated a book from Books-a-Million was still in the mailroom on September 14, 2015, but on October 14, 2015, she said the box it arrived in had been destroyed. Docs. 63-1 at 1, 75. Blakely denies destroying or disposing of any mail received or rejecting at Easterling. Doc. 64-1. Downes states he never received the notice of rejection for the Books-a-Million book, and that Blakely fabricated[4] the rejection notice dated January 21, 2015. Docs. 68 at 6, 81-1 at 1. The record includes no rejection notice for a book shipped in April 2015 from Edward R. Hamilton Bookseller Company. AR 448 provides for the receipt of books from publishers, but it does not specifically forbid hardcover books. Doc. 26-1 at 8-9. Downes insists that he did not receive a rejection notice for the hardcover book he ordered. Doc. 68 at 6. The record includes no rejection notice for the book.

- Blakely rejected religious materials sent to Downes from Rabbi Sid Kleiner because the envelope was oversized and considered a package. Doc. 75-1 at 1-2. According to Blakely, the package was not addressed to the Chaplain, and "the return address did not have Rabbi on it." Doc. 75-1 at 1. Blakely states Downes should have religious mail sent to the chaplain, who can determine if Downes may receive it. *Id.* at 2. Downes asserts it was mailed to the chaplain, and that the envelope included a sticker like one Downes previously received from Kleiner indicating it was from "Jewish Prisoner Outreach." Docs. 68 at 4, 81-1 at 2. Easterling received the mail on July 13, 2015, and Blakely rejected it on July 22, 2015. Carter denied Downes's appeal of the rejection on August 6, 2015. Doc. 46 at 5. Downes then complained to the court about the denial of materials from Kleiner at August 13, 2015. Doc. 37. Carter approved the mail from Kleiner on August 20, 2015. Docs. 63-1 at 1. The record does not include a copy of the envelope Kleiner sent in July 2015.

Blakely swears that materials sent from the Lewisburg Prison Project on March 27, 2015, were not received in the Easterling mailroom until May 28, 2015, and that she did not mark out the postmark. Docs. 62 at 2-3. Blakely's rejection of the mail indicated, "[l]egal must come from attorneys, courts, judge, clerks, and other officials of the court and government agencies." Doc. 63-1 at 4. Woods states he advised Downes that the mail was not "legal mail," and because it was

---

[4] Blakely has amended her affidavit seven times in response to court orders and answered interrogatories from him. Docs. 26-5, 30-1, 48-1, 52-1, 55-1, 62, 63-1, 64-1, 75-1. The court previously denied Downes's request for sanctions against the defendants for false statements by Blakely. Doc. 72, 76.

received in an oversized envelope, Downes "would have to write Warden Derrick Carter a request to receive the oversized envelope." Doc. 26-4. Carter reviewed the materials and determined they were not "legal mail," and therefore they were subject to routine search procedures. Doc. 26-3. Carter states, "[i]n any event it was determined that the inmate could have the contents of the correspondence," and Downes received it on June 26, 2015. *Id.* Davenport agrees the materials from the Lewisburg Prison Project were not legal mail. Doc. 26-2.

On May 18, 2015, Sobel at the Lewisburg Prison Project received Downes's letter inquiring about the status of the materials. Doc. 70-4. On May 28, 2015, and May 31, 2015, Downes submitted inmate memos, asking where the Lewisburg Prison Project materials were. Doc. 29-1 at 27-28. A reply dated June 3, 2015, with the initial "LtW," states, "Can't help with that. See Warden Carter." Doc. 29-1 at 28. On June 8, 2015, Sobel received another letter from Downes, asking the whereabouts of the materials. Doc. 70-3. Sobel called Blakely, who said Downes needed to get proper authority at the institution to have the materials. Docs. 70-1, 70-3. That same day, Sobel wrote to Downes and advised him to "follow through with the proper procedure . . . ." Docs. 70-1, 70-3.

### IV. OFFICIAL CAPACITY CLAIMS FOR MONEY DAMAGES

Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). State officials may not be sued in their official capacity for money damages unless the state has waived its Eleventh Amendment immunity or unless Congress has abrogated the state's immunity, and neither has occurred in this case. *See Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997) (citing *Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996) (discussing abrogation by Congress); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984) (discussing Eleventh Amendment

8

immunity); *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (Alabama has not waived Eleventh Amendment immunity)). In light of the foregoing, the defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for Downes's claims seeking monetary damages from them in their official capacities. The claims for money damages brought against the defendants in their official capacities are therefore due to be dismissed.

## V. PRISON LITIGATION REFORM ACT

### A. 42 U.S.C. § 1997e(a)

Defendants argue Downes's claims are due to be dismissed under the Prison Ligation Reform Act ("PLRA"). Doc. 28 at 12. Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement "is an affirmative defense"; it is not jurisdictional or a pleading requirement. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Woodford v. Ngo*, 548 U.S. 81, 101 (2006) ("the PLRA exhaustion requirement is not jurisdictional"); *Bryant v. Rich*, 530 F.3d 1368, 1374-75 & n.10 (11th Cir. 2008). If the defense is raised in a motion for summary judgment, it must be treated as a motion to dismiss under Federal Rule of Civil Procedure 12. *Bryant*, 530 F.3d at 1374-75. The court conducts a two-step inquiry in applying § 1997e(a). *See Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008). First, the court considers the parties' versions of the facts, and if they conflict, takes the plaintiff's version as true. *Id.* at 1082. If, based on the plaintiff's version, the claim is unexhausted, the court must dismiss the claim. *See id.* Second, if the case cannot be dismissed based on plaintiff's version and there are factual disputes, "the court then proceeds to make specific findings in order to resolve the disputed

factual issues related to exhaustion. The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id.* (citations omitted).

Defendants only argument regarding § 1997e(a) is AR 448 "provides for an inmate to appeal a decision that certain reading materials are not allowed. The Plaintiff never appealed the Warden's decision." Doc. 28 at 13. That is not exactly what the regulations require. Under SOP 448-1, "[t]he inmate may appeal the decision [to reject mail] by returning the form to the Mailroom. [] The appeal will be reviewed by the Warden or his designee." Doc. 64-2 at 6. SOP 448-01 does not provide for further appeal by the inmate. Moreover, Downes's complaint about the Lewisburg Prison Project package centers on the delay in receiving it, and Downes inquired into its whereabouts on May 28, 2015, and again on May 31, 2015, before filing suit. Doc. 29-1 at 27-28. According to the June 2, 2015, Form 448 for the package, Easterling received the Lewisburg Prison Project materials on May 28, 2015, the day Downes first inquired about them. Doc. 63-1 at 4. It is not possible to tell when the materials were postmarked because the postmark date on the envelope is blotted out. Doc. 29-1 at 34. The Form 448 matter was resolved in Downes's favor on June 26, 2015, after he filed suit, but in any event Carter did not use a Form 448 to approve the mail. Instead he used a memo. Doc. 63-1 at 1, 4, 6. Thus, it appears Downes did exhaust the "available" administrative procedures to obtain the Lewisburg Prison Project materials that he alleges had been sitting in the mailroom undelivered.

As for Downes's claim regarding receipt of religious materials from Rabbi Kleiner, it is undisputed that when Downes filed his original complaint in June 2015, the incident regarding materials from Rabbi Kleiner had not yet occurred.[5] The materials were received at Easterling on

---

[5] To the extent Plaintiff raised a claim about the religious materials, the defendants have not raised a § 1997e(a) defense. *See* Fed. R. Civ. P. 12(h)(1); *Union Pac. R. Co. v. Bhd. of Locomotive Engineers & Trainmen Gen. Comm.*

July 13, 2015. Blakely rejected them for being in a non-standard envelope on July 22, 2015. Warden Carter upheld the rejection of the materials on August 6, 2015. Doc. 46 at 5. Downes then raised the issue before the court in materials he mailed on August 13, 2015, to show that he was not receiving his mail. Docs. 35, 36, 37. The court then ordered the defendants to address whether the materials were received and, if Downes was denied access, the reason for lack of delivery. Docs. 39, 43. On August 20, 2015, Carter reconsidered the denial and approved them for distribution to Downes. Doc. 75 at 4. As part of his claim that his mail was improperly delayed, Downes did exhaust his administrative remedies before raising the issue about the materials from Kleiner. Finally, Downes's claims regarding the book from the publisher, the stamps, and the envelope is that he did not receive them at all, consequently, there was no Form 448 to appeal. Consequently, the court concludes the defendants have not met their burden to show Downes failed to exhaust his administrative remedies before filing suit regarding his claims. Defendants' motion to dismiss based on § 1997e(a) is therefore due to be denied.

### B. 42 U.S.C. § 1997e(e)

The defendants also assert that Downes does not allege "a prior showing of a physical injury," consequently he cannot obtain compensatory damages "for mental or emotional injury." *See* 42 U.S.C. § 1997e(e); Doc. 28 at 13. It is undisputed on this record that Downes does not demonstrate a prior showing of physical injury. His claim for punitive damages and compensatory damages for mental or emotional injury is therefore barred by § 1997e(e). *See Al-Amin v. Smith*, 637 F.3d 1192, 1198 (11th Cir. 2011) (holding prior case law "forecloses the punitive damage

---

*of Adjustment, Cent. Region*, 558 U.S. 67, 81-82 (2009) ("Subject-matter jurisdiction . . . refers to a tribunal's power to hear a case, a matter that can never be forfeited or waived. In contrast, a claim-processing rule, even if claim-processing rule, . . . even if unalterable on a party's application, does not reduce the adjudicatory domain of a tribunal and is ordinarily forfeited if the party asserting the rule waits too long to raise the point.") (quotation marks and citation omitted); *Bryant*, 530 F.3d at 1374-75 (exhaustion is affirmative defense to be raised in a motion to dismiss).

relief sought by Al-Amin, given that his constitutional claim does not meet § 1997e(e)'s physical injury requirement"). Nevertheless, to the extent Downes requests nominal damages, they "'are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages.'" *Williams v. Brown*, 347 F. App'x 429, 436 (11th Cir. 2009) (quoting *Hughes v. Lott*, 350 F.3d 1157, 1162 (11th Cir. 2003)). Compensatory damages for loss of property is also unaffected by § 1997e(e). *See Thompson v. Carter*, 284 F.3d 411, 418 (2d Cir. 2002) ("We also do not perceive any basis in Section 1997e(e) for barring an award of compensatory damages for the loss of Thompson's property provided he can establish actual injury.") Section 1997e(e) does not bar claims for declaratory or injunctive relief. *See id.*; *see also Al-Amin*, 637 F.3d at 1198. The court now turns to the merits of Downes's claims.

## VI. DISCUSSION

Defendants assert they are entitled to qualified immunity. Doc. 28 at 8. Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but rather immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) (quotation marks and citations omitted). To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Downes v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). There is no dispute that the defendants were acting within the course

and scope of their discretionary authority when the incidents complained of occurred. The plaintiff must, therefore, allege facts that, when read in a light most favorable to him, show that the defendants are not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To satisfy his burden, a plaintiff must show two things: (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (quotation marks and citations omitted); *Gaines v. Wardynski*, 871 F.3d 1203, 1208-09 (11th Cir. 2017) ("clearly established law" means (1) "a materially similar case has already been decided," (2) "a broader, clearly established principle that should control the novel facts of the situation," or (3) "the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." (quotation marks and citations omitted). The controlling case law is from "the United States Supreme Court, the Eleventh Circuit, or the highest court in the relevant state." *See id.* at 1209. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quotation marks and citations omitted). The Court of Appeals for the Eleventh Circuit "has stated many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Gaines*, 871 F.3d at 1210. If Downes cannot establish both elements to satisfy his burden, the defendants are entitled to qualified immunity,

and the court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (citing *Pearson*, 555 U.S. at 241-42).

### A. Letter of June 8, 2015

Downes claims that Blakely and Woods opened and read the June 8, 2014, letter from Sobel outside his presence. "Interference with legal mail implicates a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). In *Taylor v. Sterrett*, 532 F.2d 462, 475 (5th Cir. 1976) the court determined that a prisoner's right of access required "that incoming prisoner mail from courts, attorneys, prosecuting attorneys, and probation or parole officers be opened only in the presence of the inmate." *Id.* (footnote omitted). In *Al-Amin*, 511 F.3d 1334, the Eleventh Circuit acknowledged that *Taylor* addressed other types of mail but limited its decision to the precise facts before it regarding prisoners' constitutionally protected right to have their properly marked attorney-client mail opened in their presence. *Cf. Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996) (indicating that because an inmate's incoming court mail is largely a matter of public record, it should not be deemed legal mail); *Martin v. Brewer*, 830 F.2d 76, 78 (7th Cir. 1987) (same); *McCain v. Reno*, 98 F.Supp.2d 5, 7-8 (D.D.C. 2000) (the Constitution does not require same treatment for court mail as for attorney mail). Isolated incidents of mail interference, however, are generally insufficient to establish a constitutional violation. *Davis,* 320 F.3d at 351 (holding that the allegation of two incidents of mail interference did not warrant relief where plaintiff failed to allege invidious intent or actual harm); *see also Florence v. Booker*, 23 F. App'x 970, 972 (10th Cir. 2001) ("single incident in which prison officials allegedly improperly opened legal mail" did not justify relief where plaintiff failed to "show either an improper motivation by defendants or denial of access to the courts"). Rather, the inmate must

14

show that a prison official "regularly and unjustifiably interfered" with the inmate's mail. *Davis*, 320 F.3d at 351.

Here, it is undisputed that although the June 8, 2015, letter was marked "legal mail" from an attorney, it was not actually from his attorney, and it did not concern Downes's court cases. Instead, the letter was a follow-up regarding non-legal materials the Lewisburg Prison Project previously mailed to Downes at Easterling that Downes had not received. Thus, it is questionable whether the June 8, 2015, letter constitutes "legal mail." If it was not "legal mail," Downes could not have suffered a First Amendment injury when it was opened.

Even assuming the mail was "legal mail" for purposes of the First Amendment, and that Blakely and Woods opened and read it outside of Downes's presence, the defendants are entitled to summary judgment. The incident was, at best, an isolated incident insufficient to establish a constitutional violation. *Davis*, 320 F.3d at 351; *Gardner v. Howard*, 109 F.3d 427, 430-31 (8th Cir. 1997) (isolated, inadvertent instances of legal mail being opened outside of an inmate's presence are not actionable); *see also Florence*, 23 F. App'x at 972-73. Downes does not identify other "legal mail" that was opened and read outside of his presence. At about the same time as the claimed violation regarding the June 8, 2015, letter, Downes received another letter marked "legal mail" from the Lewisburg Prison Project that was opened in his presence without incident. Doc. 29 at 1-2. There is not a genuine dispute of material fact on this record whether Downes's "legal mail" was "regularly and unjustifiably" interfered with by the defendants or that their actions resulted from an improper motivation. *See Davis*, 320 F.3d at 351; *Al-Amin*, 511 F.3d at 1334. Consequently, the defendants are due to be granted summary judgment on the claim that they violated Downes's First Amendment rights when they opened and read the June 8, 2015, letter from Sobel outside of Downes's presence.

15

### B. Hardcover Book from the Publisher

Downes claims he never received a hard back book sent in April 2015 from the Edward R. Hamilton Bookseller Company, and he needed it for his legal work. Doc. 4 at 4-6. The court concludes that, although there is scant support in this record for a ban on hardcover books sent to prisoners directly from publishers, there is not a genuine dispute regarding Downes's specific claim, and the defendants are entitled to judgment as a matter of law.

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (quotation marks omitted). Courts are "sensitive to the delicate balance that prison administrators must strike between the order and security of the internal prison environment and the legitimate demands of those on the 'outside' who seek to enter that environment, in person or through the written word." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). Courts "afford[ ] considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." *Id.* at 408. Thus, prison regulations that impinge on an inmate's First Amendment rights must be "reasonably related to legitimate penological interests," and in making that determination, courts consider and balance the four factors set out in *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see Thornburgh*, 490 U.S. at 413 (Turner reasonableness test applies to publications sent to an inmate). The four factors are: (1) "whether the regulation has a valid, rational connection to a legitimate governmental interest;" (2) "whether alternative means are open to inmates to exercise the asserted right;" (3) "what impact an accommodation of the right would have on guards and inmates and prison resources; and" (4) "whether there are ready alternatives to the regulation."

*Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (quotation marks omitted, citing *Turner*, 482 U.S. at 89-91).

Blakely states she did not destroy or disposed of any mail received or rejected at Easterling. Doc. 64-1 at 1. She also states inmates may not have hardcover books "per the Institutional Warden." Doc. 30-1 at 1. Counsel elaborates, "Hard bound/back books are not allowed at the Facility due to an inmate's ability and propensity to conceal items of contraband inside hard bound books and in hard bound book binders." Doc. 30 at 1.

A year after Blakely filed suit regarding the book from the Edward R. Hamilton Bookseller Company, the Court of Appeals for the Eleventh Circuit held a jail official was not entitled to summary judgment on a claim for nominal damages for an alleged First Amendment violation. *Daker v. Warren*, 660 F. App'x 737, 739 & n.1 (11th Cir. 2016) (per curiam), *cert. denied*, 138 S. Ct. 94 (2017), *and cert. denied*, 138 S. Ct. 98 (2017). In *Daker*, the reasons given for banning hardcover books to pretrial detainees were the hardcover books "could be used as weapons and to smuggle contraband items." *Id.* at 744. The Court of Appeals held the prison officials failed to meet the first *Turner* factor. *Id.* It explained the record before it did not address why officials had security concerns about hardcover books sent directly from the publisher when it allowed the same books in softcover format; that there was no evidence in the record that hardcover books had been used as weapons or a reasonable basis for believing hardcover books increases the likelihood of violence at the institution; and that other courts recognized a distinction between hardcover books, particularly those not available in other formats, received directly from publishers for inmates not in special management, as compared to books sent in from individuals or for inmates in segregation. *Id.* at 744-46; *see id* at 745 (relying on dicta from *Cruz v. Hauck*, 475 F.2d 475, 477 (5th Cir. 1973), for the proposition "that it was not enough for prison officials to claim fear of

17

weapons and contraband"). The Court of Appeals noted their ruling was "narrow" and invited the court on remand to reopen the record to consider more evidence to "show[] a logical connection between the ban and the security interests," and, if the official met the first *Turner* factor, to "address the remaining *Turner* factors." *Daker*, 660 F. App'x at 746 & n.3.

The rationale offered here for banning hardcover books from publishers is similarly slim. Nevertheless, the Court concludes that the defendants are entitled to summary judgment. First, unlike the regulation in *Daker*, the Easterling regulation in the record regarding books does not actually ban hardcover books, notwithstanding the reasons offered for denying inmates hardcover books. *Compare Daker*, 660 F. App'x at 743 *with* Doc. 26-1 at 8-9. Second, it is apparent from the record that Blakely was not involved in rejecting or taking the book shipped in April 2015. Blakely addresses only a book received from Books-a-Million in January 2015, not the book Downes asserts is missing from Edward R. Hamilton Bookseller Company shipped in April 2015. Downes does not have a rejection slip for the book from Edward R. Hamilton Bookseller Company. Consequently, if there was a First Amendment violation, it was not attributable to Blakely. Whatever happened to Downes's missing book is therefore more a question of lost property or attributable to someone who is not a defendant in this case. It is well established that negligent or intentional deprivations of property resulting from random, unauthorized acts of government officials do not become due process violations when there exist adequate remedies under state law for him to seek redress for the deprivation. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("an unauthorized, intentional deprivation of property by a state employee does not constitute a violation of the due process requirements of the Fourteenth Amendment if a meaningful post deprivation remedy for the loss is available"); *see Parratt v. Taylor*, 451 U.S. 527, 543-44 (1984), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986) (overruling *Parratt* to the

extent that it states that mere lack of due care by a state official may "deprive" an individual of life, liberty, or property under the Fourteenth Amendment); *Rodriguez-Mora v. Baker*, 792 F.2d 1524, 1527 (11th Cir. 1986). Because Ala. Code §§ 41-9-60, et seq., provide a post-deprivation remedy for the alleged destruction or confiscation of Downes's property, he cannot maintain a § 1983 action based on the alleged deprivation.

Under the circumstances of this case, the record does not suggest the defendants were "plainly incompetent or those who knowingly violate the law." *Messerschmidt*, 565 U.S. at 546 (quotation marks and citations omitted). Because there is not a genuine dispute whether the defendants crossed a bright line of clearly established law, the defendants are entitled to qualified immunity on Downes's claim for damages. *See Rehberg*, 611 F.3d at 839; *Gaines*, 871 F.3d at 1210. The parties disagree regarding the date the hardcover book was received at Easterling and which publisher shipped it. Regardless of the date the book shipped or the publisher, the prison apparently no longer has the hardcover book Downes ordered. Docs. 63-1 at 1; 75-1 at 1; 81-1 at 1. Consequently, Downes's request for injunctive relief on this claim is moot.[6]

### C. Lost or Destroyed Mail

Downes further claims he should have received mail from Carolyn Ford, including envelopes and stamps he needed to mail legal materials. The defendants do not suggest that prison officials would refuse to allow Downes to have the materials, but rather that they never arrived at

---

[6] Downes states other inmates received hard back books, and that he has oversized envelopes other inmates received, like those denied him, that he could submit into evidence. Doc. 68 at 4. He provides no other details about the other books or materials he has, and his conclusory, unsupported statements are not sufficient to create a genuine dispute of fact on the First Amendment questions. *See Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987) ("unsubstantiated assertions alone are not enough to withstand a motion for summary judgment"); *see also Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998) (conclusory allegations without specific supporting facts have no probative value). The court also does not construe the allegations to raise an equal protection or discrimination claim.

the institution. Downes's claim is therefore more in the nature of a claim for loss of property, not a deprivation under the First Amendment. *See Hudson*, 468 U.S. at 533; *Rodriguez-Mora v. Baker*, 792 F.2d 1524, 1527 (11th Cir. 1986). Because Ala. Code §§ 41-9-60, et seq., provide a post-deprivation remedy for the alleged destruction or confiscation of Downes's property, he cannot maintain a § 1983 action based on the alleged deprivation.

### D. Access to the Courts and Delayed Mail Delivery

Downes claims that Blakely delayed the delivery of a package of materials from the Lewisburg Prison Project, harming his case in the Alabama Court of Criminal Appeals. Doc. 68 at 5. He asserts he needed the materials, as well as the book and the envelope and stamps from Carolyn Ford, for his cases.

Prisoners are entitled to "a reasonably adequate opportunity" to present claims of constitutional violations to the courts. *Bounds v. Smith*, 430 U.S. 817, 825 (1977). In *Lewis v. Casey*, 518 U.S. 343, 349 (1996), the Supreme Court expounded on the decision in *Bounds* and required that an inmate demonstrate the existence of an "actual injury" affecting his effort to pursue a non-frivolous legal claim to demonstrate a denial of access to the courts. Moreover, *Lewis* emphasized that a *Bounds* violation is related to an inmate's lack of capability to present claims. "*Bounds*, which as we have said guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts. When an inmate . . . shows that an actionable claim of this nature which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because the capability of filing suit has not been provided, he demonstrates" the requisite injury. *Lewis*, 518 U.S. at 356. "Actual injury" means "deterrence, such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from

actions of prison officials." *Al-Amin*, 511 F.3d at 1332 (internal quotes and citations omitted). "The limited types of legal claims protected by the access-to-courts right [are] nonfrivolous appeals from a conviction, habeas petitions, or civil rights suits." *Id.*

To the extent that Downes alleges a denial of access to the courts, his claims fail because he has not created a genuine dispute regarding injury or prejudice, which is required to prevail on such a claim. *Wilson v. Blankenship*, 163 F.3d 1284, 1290 (11th Cir. 1998). Downes asserts he needed the materials for his appeal at the Alabama Court of Criminal Appeals, but does not identify specifically how his inability to have the materials hindered his challenge to his conviction or civil rights case, or that the case was resolved against him. Doc. 68 at 5-6 (indicating that Downes's case was still on appeal). Downes presents nothing to demonstrate that the disposition of his postconviction case, or any other case, was harmed by conduct of the defendants or by his inability to access the courts such that he experienced adverse consequences or an actual injury from the alleged deprivation as contemplated in *Lewis*. *See Lewis*, 518 U.S. at 349; *Daker*, 660 F. App'x at 741 (rejecting access to the courts claim because inmate "has not explained how he had colorable claims for relief that he could have asserted but for the alleged lack of access to the courts"). Downes's "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987); *see also Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998) (conclusory allegations without specific supporting facts have no probative value). This isolated incident is insufficient to establish a constitutional violation. *See Davis,* 320 F.3d at 351 (allegation of two incidents of mail interference did not warrant relief where plaintiff failed to allege invidious intent or actual harm). Defendants are entitled to summary judgment on his access to courts claim, as well as his claim concerning the delay of mail from the Lewisburg Prison Project.

**E. Religious Materials**

Downes claims defendants wrongfully denied him mail from Rabbi Kleiner. There is not a genuine dispute on the record that the mail was identified as coming from "Rabbi Kleiner," and it was an oversized envelope requiring special approval for delivery under prison rules. Downes does not specifically challenge the rule requiring special approval for larger envelopes that are not legal mail. Moreover, Downes received the materials. Although Downes asserts that other inmates of other faiths received religious mail in similar envelopes, his statements are conclusory and unsubstantiated. "[U]nsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins*, 833 F.2d at 1529; *see also Carter*, 132 F.3d at 642. Accordingly, the defendants' dispositive motion is due to be granted on Downes's claim regarding receipt of religious materials. *See Anderson*, 477 U.S. at 252.

**F. Respondeat Superior**

Downes seeks to hold defendants Dunn, Davenport, Myers, Cargill, and Lawson ("the supervisory defendants") liable for the actions about which he complains based on their supervisory positions. Docs. 1, 3, 4, 17, 92. Supervisory personnel cannot be liable under § 1983 for a constitutional violation by their subordinates via a theory of respondeat superior or on the basis of vicarious liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (doctrine of respondeat superior is inapplicable to § 1983 actions); *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability); *see also Cottone*, 326 F.3d at 1360; *Kilgo v. Ricks*, 983 F.2d 189, 194 (11th Cir. 1993) (holding the prison commissioner's dismissal was proper because no personal involvement or policy by the department was alleged). "Absent vicarious liability, each Government official, his or her title

22

notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. Thus, liability for actions of correctional officials at Easterling could attach to the supervisory defendants only if they "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions . . . and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

The supervisory defendants did not personally participate in or have any direct involvement with the claims made the basis of the complaint. Thus, they can be held liable for actions of correctional officials at Easterling only if their actions bear a causal relationship to the purported violations of Downes's constitutional rights. To establish the requisite causal connection and avoid entry of summary judgment in favor of these supervisory defendants, Downes must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [the supervisory defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so . . ." or "a . . . custom or policy [that] result[ed] in [violation of his] constitutional rights, or . . . facts [that] support an inference that [the supervisory defendants] directed the [supervised defendants] to act unlawfully, or knew that [they] would act unlawfully and failed to stop them from doing so." *Id.* (internal punctuation and citations omitted). A thorough review of the pleadings and evidentiary materials submitted in this case demonstrates that Downes has not met this burden.

The record before the court contains no evidence to support an inference that the supervisory defendants directed correctional officials to act unlawfully or knew that they would act unlawfully and failed to stop such action. In addition, Downes presents no evidence of obvious, flagrant or rampant abuse of a continuing duration in the face of which the supervisory defendants failed to take corrective action. Finally, it is clear that the challenged actions did not occur pursuant

23

to a policy enacted by the supervisory defendants, except for the mail procedures on which, as previously explained, the defendants are entitled to summary judgment. Thus, the required causal connection does not exist between the challenged actions of correctional officials at Easterling and the supervisory defendants, and liability under the custom or policy standard is not warranted. Based on the foregoing, summary judgment is due to be granted in favor of the supervisory defendants on Downes's claims for relief based on respondeat superior.

## VII. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motion to dismiss under 42 U.S.C. § 1997e(a) be DENIED.

2. Defendants' motion for summary judgment be GRANTED.

3. Judgment be GRANTED in favor of Defendants.

4. This case be DISMISSED with prejudice.

5. The costs of this proceeding be taxed against Plaintiff.

It is further

ORDERED that on or before February 12, 2018, the parties may file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a de novo determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon

24

grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 25th day of January, 2018.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE