IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JAMES R. DOWNES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACT. NO.  2:15-cv-437-ECM |
| | ) | (WO) |
| CARTER DAVENPORT, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

Now pending before the Court is the Recommendation of the Magistrate Judge that summary judgment be denied and that the case be referred for an evidentiary hearing on Plaintiff John Downes' claim for injunctive relief. (Doc. 122). The Plaintiff has filed objections to the Recommendation, (doc. 123), as have Carter Davenport, Warden Carter, Lt. Woods, Mrs. Blakely, Jefferson S. Dunn, Walter Myers, Capt. Cargill and Capt. Lawson ("Defendants") (doc. 125).

The Court has carefully reviewed the entire record in this case, including the Magistrate Judge's Recommendation and the objections, and upon an independent and *de novo* review pursuant to 28 U.S.C. § 636(b), the Plaintiff's objections are due to be overruled, the Defendants' objections are due to be overruled in part and sustained in part, and the Magistrate Judge's Recommendation that the motion for summary judgment be denied is due to be adopted.

The relevant facts are more fully set out in the Recommendation, but in summary, the Plaintiff, an inmate of Easterling Correctional Facility, ordered a hardcover book,

*Packing the Court*, directly from Edward R. Hamilton Bookseller Company, but was not allowed to receive it. *Packing the Court* also is available as a soft-bound book. (Doc. 113–3). The regulations which govern inmate mail do not specifically forbid hardcover books, but Defendant Sharon Blakely, the Mail Clerk at Easterling, has presented evidence that that inmates cannot receive hardcover books there. (Doc. 109–1 at 1).

In his objections to the Recommendation of the Magistrate Judge, the Plaintiff states that while *Packing the Court* may be available in softcover, is not available to him in softcover from the only book seller available to him, but that statement is unsworn, and therefore cannot create a question of fact.  The Plaintiff further asserts that he has ordered a second book which arrived at the prison in hardback and which the prison will not allow him to access, but that statement also is unsworn.  The Plaintiff also states that he was not informed that he could not have hardcover books, but that statement is not a part of the applicable analysis discussed below.  Finally, the Plaintiff refers to other items he cannot receive at the prison, but that objection is not relevant to the claim in the case. Upon review of the entire record, this Court cannot conclude that any of Downes' objections are meritorious.  All of his objections, therefore, are due to be overruled.

The Defendants also raise multiple objections, most of which stem from the Defendants' characterization of the Plaintiff's claim, which is inconsistent with this Court's interpretation of that claim as announced in a previous Order.  The Defendants object that the Plaintiff's First Amendment rights have not been impinged because he was free to read *Packing the Court* in a soft-bound version.  In a previous Order largely adopting a

2

Recommendation in this case, however, in addressing a contention that the Plaintiff's hardcover book was lost at the prison, this Court ruled that Downes' "complaint, liberally construed, requests that incoming mail, including hardcover books, be delivered to him. (See Doc. # 4, at 4–5).  Should the Magistrate Judge find that the ban on hardcover books— if such a ban is in place—is unconstitutional, Downes may be entitled to prospective injunctive relief, and such a claim does not appear to be moot as a matter of law." (Doc. 106 at 3).  Therefore, the mere fact that one hardback book is also available in soft-cover is not dispositive of Downes' claim which includes all hardcover books mailed to him. Accordingly, the Court turns to the Defendants' objections as to the analysis which applies when a First Amendment right is infringed.

Under the applicable analysis, to balance judicial deference with the need to protect constitutional rights, a court will find that a prison regulation affecting constitutional rights is valid as long as it is content neutral and "reasonably related to legitimate penological interests." *Prison Legal News v. Sec'y, Fla. Dep't of Corr.*, 890 F.3d 954, 967 (11th Cir. 2018).  There are four factors to determine the reasonableness of prison regulations: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means to exercise the First Amendment right; (3) what impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether the Defendants can point to alternatives that

fully accommodate rights at *de minimis* cost to valid penological interests. *Id.* (citing *Turner v. Safley*, 482 U.S. 78 (1987)).

As to factor one, one objection by the Defendants has some merit. The Defendants object that the Recommendation relied on analysis in *Daker v. Warren*, 660 F. App'x 737 (11th Cir. 2016), and required proof of a past security breach, but that *Prison Legal News*, 890 F.3d at 965, made it clear that such proof is not required. The *Turner* standard does not require the Defendants to present evidence of an actual security breach to satisfy the first factor. *See Prison Legal News*, 890 F.3d at 972. Therefore, to the extent that the Recommendation required proof of a security breach, the objection to that analysis is due to be sustained. The Court notes, however, that the Recommendation also applied *Prison Legal News* in its application of *Turner*, which this Court also will do. (Doc. 122 at 11).

The Defendants have presented evidence that hardback books can used as weapons and to conceal contraband. (Doc. 113-1). Upon consideration of the applicable law and the record, this Court finds that the Defendants' ban is not "so remote'' from security and safety interests as to render the ban "arbitrary or irrational." *Prison Legal News,* 890 F.3d at 972. The Court, therefore, finds that the first *Turner* factor weighs in favor of the Defendants.

The Defendants object under the second *Turner* factor that the book in question is available in soft cover, so Downes had an alternative method to exercise his First Amendment rights, and that the Recommendation goes beyond the record to discuss all

hardback books. As noted, however, a ban as to all hardcover books mailed to the Plaintiff is at issue in this case.

The Recommendation pointed to alternatives to a complete hardcover book ban such as taking the covers off the hardcover books or keeping the Plaintiff's hardback books in the prison library. Other decisions have approved restrictions on books where alternatives are provided. *See, e.g.*, *Bell v. Wolfish*, 441 U.S. 520, 552 (1979) (approving a hardback book restriction where the restriction allows soft-bound books and magazines to be received from any source and hardback books to be received from publishers, bookstores, and book clubs and there is a "relatively large" library for use by inmates); *Kramer v. Conway*, 962 F. Supp. 2d 1333, 1346–47 (N.D. Ga. 2013) (considering access to books in the library in *Turner* analysis of limitation on the number of books that plaintiff can have in his cell).

The Defendants also object that the Recommendation improperly relied on a fact not in the record; namely, that there are hardback books which are not available in soft cover. In connection with other *Turner* factor analysis, however, the Defendants also point to the costs of removing the covers of "hundreds, if not thousands," of hardback books for which there is no softback alternative. (Doc. 125 at 10).

Because, contrary to the Defendants' position, a complete hardcover book ban is at issue, and there is no apparent alternative method of exercising First Amendment rights when no softcover version is available, this Court concludes that at this point in the

5

proceedings, the second *Turner* factor does not weigh in the Defendants' favor. *See Prison Legal News*, 890 F.3d at 967.

With respect to the third *Turner* factor, which is the impact accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally, the Defendants argue that the alternative of ordering a softcover book "is far more accommodating than" making a hardcover book available in the library because it allows the inmate to have the softcover book in his cell and not have to wait to use it in the library.  (Doc. 125 at 8).  This argument does not address the application of the complete ban of hardcover books for which there is not soft-cover alternative, however. The third *Turner* factor will weigh in favor of prison officials if accommodating the right has "a significant ripple effect" on staff and other inmates. *Turner*, 482 U.S. at 90.  On this record, however, this Court finds that it does not have sufficient evidence before it of the effect of accommodating the Plaintiff's right when the complete ban on hardcover books is considered.

As to the fourth *Turner* factor, the Defendants argue that maintaining a library of every single hardcover book for which there is no soft-cover version or removing the covers from hundreds of hardback books would be cost-prohibitive. The Defendants' argument goes too far, however, because the Recommendation does not suggest as an alternative a prison-purchased collection of every hardcover book for which there is no soft-bound version. (Doc. 122 at 10).

6

The existence of hardback-only books, and the costs of providing access to them, are issues in this case as to which this Court has not been provided sufficient information to appropriately weigh the *Turner* factors. Therefore, the Court will follow the Recommendation of the Magistrate Judge and deny summary judgment to the Defendants and will conduct an evidentiary hearing so that the *Turner* factors can appropriately be applied.

Accordingly, for the reasons stated, it is hereby ORDERED as follows:

1. The Plaintiff's objections are OVERRULED.

2. The Defendants' objections are SUSTAINED to the extent that the Recommendation required proof of a past security breach under the first *Turner* factor and is OVERRULED in all other respects.

3. The Court adopts the Recommendation of the Magistrate Judge, and the Defendants' supplemental motion for summary judgment is DENIED.

4. This case is set before the undersigned for an evidentiary hearing on Downes's claim for injunctive relief on **August 4, 2020** at **10:00** a.m., in Courtroom 2-A, at the Frank M. Johnson, Jr. Federal Building and United States Courthouse Complex, Montgomery, Alabama.

5. Officials at the Alabama Department of Corrections or the persons having custody of the plaintiff shall produce him for the hearing.  The Clerk of the Court is DIRECTED to serve a copy of this order on the General Counsel for the Department of Corrections.

DONE this 28th day of May, 2020.

                                                /s/ Emily C. Marks
                                    EMILY C. MARKS
                                    CHIEF UNITED STATES DISTRICT JUDGE